# EXHIBIT A

Jason and Jeff,

Attached are the Discovery Requests for Ronald Draper.

Curtis

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| WOODBRIDGE GROUP OF COMPANIES, LLC, | ) Case No. 17-12560 (JKS) |
| *et al.,* | ) (Jointly Administered) |
| | ) |
| Debtors. | ) |
| | ) |
| MICHAEL GOLDBERG, as Liquidating Trustee of | ) Adversary Case No. 19-50347 (JKS) |
| the Woodbridge Liquidation Trust, successor in | ) |
| interest to the estates of WOODBRIDGE GROUP | ) |
| OF COMPANIES, LLC, *et al.,* | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) |
| | ) |
| RONALD DRAPER, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## DEFENDANT RONDALD DRAPER'S FIRST SET OF REQUESTS FOR ADMISSIONS, INTERROGATORIES, AND REQUESTS FOR PRODUCTION OF DOCUMENTS PROPOUNDED BY DEFENDANT

Pursuant to Federal Rules of Bankruptcy Procedure 7033, 7034 and 7036, and

Federal Rules of Civil Procedure 33, 34, and 36, Ronald Draper, as defendant in the above-

captioned adversary proceeding, hereby requests that Michael Goldberg, as the Liquidating

Trustee of the Woodbridge Liquidation Trust, as the plaintiff, respond to *Defendant Ronald*

*Draper's First Set of Requests for Admissions, Interrogatories, and Requests for Production of*

*Documents Propounded by Defendant* (the "Discovery Requests") and produce all responses to

the Discovery Requests to the Law Office of Curtis A. Hehn, Attn: Curtis A. Hehn, Esq., 1007

N. Orange St., 4th Floor, Wilmington, DE 19801, within thirty (30) days after the date of service

hereof.

## DEFINITIONS

As used in these Discovery Request, the following words and terms shall mean and include the following:

1. "Affidavit of Service for Notice of Effective Date" means the *Affidavit of Service [D.I. 3445]*, filed on February 26, 2019, evidencing the service of the Notice of Effective Date

2. "Affidavit of Service for Notice of Confirmation Hearing" means the *Affidavit of Service [D.I. 2553]*, filed on September 12, 2018, evidencing, among other things, the service of the Notice of Confirmation Hearing (and any supplemental services of the Notice of Confirmation Hearing filed thereafter).

3. "Agents and Professionals" means all of the agents and professionals employed by the Liquidation Trustee, the Liquidation Trustee, or the Liquidation Trust Supervisory Board, including, but no limited to all attorneys, accountants, real estate brokers, appraisers, valuation counselors, transfer agents.

4. "Allowed Claim" has the same definition that was ascribed to such term in Section 1.3 of the Plan.

5. "Avoidance Actions" has the same definition that was ascribed to such term in Section 1.5 of the Plan.

6. "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware that is adjudicating the Debtors' Bankruptcy Cases.

7. "Bind or Bound" means the legal effect of an order entered against a party pursuant to any preclusion doctrine, including, but not limited to, the doctrines of *res judicata*,

collateral estoppel, issues preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches.

8. "Class" has the same definition that was ascribed to such term in Section 1.18 of the Plan.

9. "Committees" has the same definition that was ascribed to such term in Section 1.23 of the Plan.

10. "Communications" shall mean and include, without limitation, any Documents, correspondence, telephone conversations, discussions, facsimiles, emails, meetings, memorandum and any other medium through which any information is conveyed.

11. "Complaint" means the *Complaint for Avoidance and Recovery of Preferential and Fraudulent Transfers Pursuant to 11 U.S.C. §§ 544, 547, 548 & 550* filed by Plaintiff against the Defendant in this adversary proceeding.

12. "Concerning" shall mean relating to, constituting, concerning, referring to, regarding, bearing upon, supporting or negating, summarizing, pertaining to, alluding to, commenting upon, touching upon, recording, consisting of, affecting, reflecting, discussing, describing, evidencing, mentioning or having any logical or factual connection with the matter in question.

13. "Confirmation Date" means October 26, 2018, which was the date upon which the Bankruptcy Court signed and entered the Confirmation Order on the electronic docket for the Debtors' Bankruptcy Cases.

14. "Confirmation Hearing" means the hearing that was held before the Bankruptcy Court on October 24, 2018, upon the proposed confirmation of the Plan.

15. "Confirmation Hearing Transcript" means the transcript of the Confirmation Hearing held upon October 24, 2018 [D.I. 2888], filed on the electronic docket for the Debtors' Bankruptcy Cases on October 25, 2018.

16. "Confirmation Order" means the *Findings of Fact, Conclusions of Law, and Order Confirming the First Amended Joint Chapter 11 Plan of Liquidation of Woodbridge Group of Companies, LLC and Its Affiliated Debtors [D.I. 2903]* entered by the Bankruptcy Court on October 26, 2018.

17. "Core Properties" has the same definition that was ascribed to the term in paragraph 13 of the [Redacted] Chin Declaration.

18. "Critical Vendor Motion" means the *Debtors' Motion for Entry of Interim and Final Orders, Pursuant to Sections 105(a), 363(b), 503(b)(9), 1107(a), and 1108 of the Bankruptcy Code, Authorizing the Debtors to Pay Prepetition Claims of Critical Vendors; and Authorizing Banks to Honor and Process Checks and Electronic Transfer Requests Related to the Foregoing [D.I. 6]*, filed on December 4, 2017.

19. "Debtor" shall mean the specific debtor who made the Transfers to the Defendant that are the subject of the Complaint.

20. "Debtors' Bankruptcy Cases" shall mean these chapter 11 cases filed by the debtors.

21. "DIP Lender" means Hankey Capital, LLC.

22. "Disclosure Statement" has the same definition that was ascribed to such term in Section 1.45 of the Plan.

23.     "Distribution" has the same definition that was ascribed to such term in Section 1.48 of the Plan.

24.     "Document" means and includes all written, recorded, transcribed or graphic matter of every nature, type and kind, however and by whoever produced, reproduced, disseminated or made.  This includes, but is not limited to, any and all originals, copies or drafts of any and all of the following: Electronically Stored Information; papers; books; letters; correspondence; telegrams; cables; telexes; messages; memoranda; notes; notations; transcripts; minutes; reports; recordings of telephone conversations; any other recordings; interviews; affidavits; declarations; statements; summaries; studies; analyses; evaluations; appraisals; estimates; projections; charts, graphs and tables; schedules; proposals; offers; acceptances; purchase orders; invoices; contracts; agreements; checks and canceled checks; bills of lading; insurance binders, policies or certificates; receipts; statements; pamphlets; diagrams; statistical records; any other records; calendars; appointment books; diaries; lists; tabulations; any information contained in any computer tape, card, disk, drive, program or other device; computer print-outs; CDs; videotapes; DVDs; facsimiles; e-mails; microfilm; microfiche; any other tangible or intangible thing or item that contains any information; and, all "writings and recordings" and "photographs" (and all negatives thereof) as defined in and by the Federal Rules of Evidence 1001.  Any Document that contains any comment, notation, addition, insertion or marking of any type or kind which is not part of another Document, is to be considered a separate Document.

25.     "Effective Date" means the February 15, 2019, which is the date that the Plan was declared effective pursuant to the Notice of Effective Date.

26.  "Employee Wages Motion" means the *Debtors' Motion for Entry of an Order (A) Authorizing Payment of Certain Prepetition Workforce Claims, Including Wages, Salaries, and Other Compensation; (B) Authorizing Payment of Certain Employee Benefits and Confirming Right to Continue Employee Benefits on Postpetition Basis; (C) Authorizing Reimbursement to Employees for Expenses Incurred Prepetition; (D) Authorizing Payment of Withholding and Payroll-Related Taxes; (E) Authorizing Payment of Prepetition Claims Owing to Administrators and Third Party Providers [D.I. 10]*, filed on December 4, 2017.

27.  "Financing Motion" means the *Debtors' Motion for Interim and Final Orders (A) Prohibiting Utility Providers From Altering, Refusing, or Discontinuing Service; (B) Approving the Debtors' Proposed Adequate Assurance of Payments for Postpetition Services; and (C) Establishing Procedures for Resolving Requests for Additional Adequate Assurance of Payment [D.I. 22]*, filed on December 4, 2017.

28.  "Finding NN" means paragraph NN of the Confirmation Order's Findings of Fact and Conclusions of Law, which states:

> NN.  Conduct of a Ponzi Scheme. The evidence demonstrates, and the Bankruptcy Court hereby finds that (i) beginning no later than July 2012 through December 1, 2017, Robert H. Shapiro used his web of more than 275 limited liability companies, including the Debtors, to conduct a massive Ponzi scheme raising more than \$1.22 billion from over 8,400 unsuspecting investors nationwide; (ii) the Ponzi scheme involved the payment of purported returns to existing investors from funds contributed by new investors; and (iii)( the Ponzi scheme was discovered no later than December 2017.

29.  "First Kapila Declaration" means the Declaration of Soneet R. Kapila that (i) was admitted into evidence without objection at the January 10, 2018 hearing in the Debtors' bankruptcy cases as SEC Exhibit 1 in connection with the Motion by the U.S. Securities and Exchange Commission for Order Directing the Appointment of a Chapter 11 Trustee – as set

forth in detail in paragraph 5 of the *Declaration of Soneet R. Kapila [D.I. 2834 ]*, filed in the

Debtors Bankruptcy Cases on October 19, 2018.

30.    "Including" or "Includes" means "including without limitation."

31.    "Identify" when used with respect to a person means to provide the

following information:

(a) the name, telephone number, and residential address of the person; and

(b) the name of the present employer, place of employment, business and

job title of the person.

32.    "Identify" when used with respect to an entity means to provide the

following information;

(a) the name, telephone number and address of the entity; and

(b) the name of the entity's owners, principals, officers, and/or partners.

33.    "Identify" when used with respect to a Document means to provide the

following information:

(a) the nature of the document (e.g., letter, contract, memorandum, etc.)

(b) the date of the document;

(c) the preparer and/or source of the document and all recipients of the

document;

(d) the substance in detail of the document; and

(e) each person who now has custody, possession or control of the

document.

34.    "Identify" when used with respect to a communication means to provide the following information:

        (a) the date of the communication;

        (b) whether the communication was oral or written;

        (c) any person who sent, received, or had knowledge of the communication;

        (d) the substance in detail of the communication; and

        (e) any document embodying the communication.

35.    "Liquidation Trust" means the trust created pursuant to the terms of the Liquidation Trust Agreement and the Confirmation Order.

36.    "Liquidation Trustee" means Michael Goldberg, as Liquidating Trustee of the Woodbridge Liquidation Trust, successor in interest to the estates of Woodbridge Group of Companies, LLC, *et al.* – who is also the Plaintiff.

37.    "Liquidation Trust Agreement" means the Liquidation Trust Agreement dated as of February 15, 2019, made and entered into by and among the entities listed as "Debtors" on the on the signature pages thereto, Michael Goldberg, solely in his capacity as liquidation trustee for purposes of the Liquidation Trust Agreement, and Wilmington Trust, National Association, as Delaware trustee, for the purpose of forming a statutory trust under an pursuant to the provisions of the Delaware Statutory Trust Act, and is executed in connection with and pursuant to the terms of the Plan.

38. "<u>Liquidation Trustee Compensation</u>" means all compensation (including, but not limited to base compensation and incentive compensation) received by the Liquidation Trustee from the Liquidation Trust.

39. "<u>Liquidation Trust's Revised Projected Plan Recoveries</u>" means the Projected Plan Recoveries that were decreased by the Trust for Class 3, Class 4, and Class 5 claimants, as set forth in the September 13th Liquidation Trustee Correspondence as follows:

| Class 3 | Note Claims | 40%-63% of Allowed Claims |
| Class 4 | General Unsecured Claims | 40%-60% of Allowed Claims |
| Class 5 | Unit Claims | 29%-46% of Allowed Claims |

40. "<u>Liquidation Trust Supervisory Board</u>" has the same definition that was ascribed to the term in Article 3.1 of the Liquidation Trust Agreement.

41. "<u>Liquidation Trust Supervisory Board Member</u>" means those members of the Liquidation Trust Supervisory Board identified in Article 3.1 of the Liquidation Trust Agreement (who were identified as: Jay Beynon; Dr. Raymond C. Blackburn; Terry Goebel; and Lynn Myrick) and any other Liquidation Trust Supervisory Board Members appointed after the execution of the Liquidation Trust Agreement.

42. "<u>No Preclusion Clause</u>" means the italicized language set forth below from Article V, Section 5.62 of the Plan, which states in its entirety:

> 5.6.2 <u>Preservation of All Liquidation Trust Actions Not Expressly Settled or Released</u>. The failure to specifically identify in the Disclosure Statement or the Plan any potential or existing Avoidance Actions or Causes of Action as a Liquidation Trust Action is not intended to and shall not limit the rights of the Liquidation Trust to pursue any such Avoidance Actions or Causes of Action. Unless a Liquidation Trust Action is expressly waived, relinquished, released, compromised, or settled in the Plan or any Final Order (including the Confirmation Order), the Debtors expressly reserve such Liquidation Trust Action for later resolution by the Liquidation Trust (including any Avoidance Actions or Causes of Action

9

not specifically identified or which the Debtor may presently be unaware or that may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances that may change or be different from those the Debtors now believe to exist). *As such, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches will apply to any such Avoidance Action or Causes of Action upon or after Confirmation of the Plan based on the Disclosure Statement, the Plan, the Confirmation Order, except when such Avoidance Actions or Causes of Action have been expressly released.* In addition, the right to pursue or adopt any claims alleged in any lawsuit in which any Debtor, the Liquidation Trust, or the Wind-Down Entity is a plaintiff, defendant, or an interested party is fully reserved as against any Person that is not a Released Party, including the plaintiffs or co-defendants in such lawsuits.

43.     "Notice of Confirmation Hearing" means the *Notie of (I) Approval of Disclosure Statement, (II) Establishment of Voting Record Date, (III) Hearing on Confirmation of Plan and Procedures and Deadlines for Objecting to Confirmation of Plan, and (IV) Procedures and Deadline for Voting on Plan [D.I. 2399]*, filed on August 22, 2018.

44.     "Notice of Effective Date" shall mean the *Notice of Confirmation of, and Effective Date of, First Amended Joint Chapter 11 Plan of Liquidation of Woodbridge Group of Companies, LLC and Its Affiliated Debtors [D.I. 3421]*, filed on February 19, 2019.

45.     "Person(s)" means and includes natural persons, firms, associations, corporations, institutions, partnerships, government agencies, or other organizations cognizable at law, and their agents and employees.

46.     "Petition Date" means the date upon which the Debtor that made the Transfers to the Defendant (that are the subject of the Complaint) filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

47. "Plaintiff" means Michael Goldberg, as Liquidating Trustee of the Woodbridge Liquidation Trust, successor in interest to the estates of Woodbridge Group of Companies, LLC, *et al.*

48. "Plan" means the *First Amended Joint Chapter 11 Plan of Liquidation of Woodbridge Group of Companies, LLC and Its Affiliated Debtors*, dated August 22, 2018, attached as Exhibit A to the Confirmation Order, that was confirmed by the Bankruptcy Court.

49. "Plan Supplement" means the *Notice of Filing of Plan Supplement Documents [D.I. 2657]* (including the exhibits attached thereto), filed on September 24, 2018.

50. "Plan Term Sheet" means the Summary Plan Term Sheet that was attached as Exhibit 1 to the *Notice of Submission of Summary Plan Term Sheet Entered Into by the Debtors, the Official Committee of Unsecured Creditors, the Ad Hoc Noteholder Group, and the Ad Hoc Unitholder Group [Docket No. 828]* filed on March 27, 2018.

51. "Portfolio" has the same definition that was ascribed to the term in paragraph 13 of the Chin Declaration.

52. "PPP" means the Paycheck Protection Program means created by the federal government.

53. "Projected Plan Recoveries" means the anticipated Distributions under the Plan for Class 3, Class 4, and Class 5 creditors that were set forth in Section I(A)(3) of the Disclosure Statement in the following amounts:

| CLASS | DESCRIPTION | IMPAIRED / UNIMPAIRED | PROJECTED RECOVERY |
|-------|-------------|-----------------------|--------------------|
| Class 3 | Standard Note Claims | Impaired | 60% - 70% |
| Class 4 | General Unsecured Claims | Impaired | 60% - 70% |
| Class 5 | Unit Claims | Impaired | 40%-50% |

54. "[Redacted] Chin Declaration" means the *Declaration of Frederick Chin in Support of Confirmation of the First Amended Joint Chapter 11 Plan of Liquidation of Woodbridge Group of Companies, LLC and its Affiliated Debtors [D.N. 2833]*, filed on October 19, 2018.

55. "Relating to" means constituting, reflecting, respecting, supporting, contradicting, referring to, stating, describing, recording, noting, embodying, containing, mentioning, studying, analyzing, discussing, evaluating or relevant to.

56. "Revised Wind-Down Business Plan" means the Wind-Down business Plan identified in the September 13th Liquidation Trustee Correspondence.

57. "Riverdale Properties" has the same definition that was ascribed to the term in paragraph 13 of the [Redacted] Chin Declaration.

58. "Second Kapila Declaration" means the *Declaration of Soneet R. Kapila [D.I. 2834 ]*, filed in the Debtors Bankruptcy Cases on October 19, 2018.

59. "[Sealed] Chin Declaration" means the *Declaration of Frederick Chin in Support of Confirmation of the First Amended Joint Chapter 11 Plan of Liquidation of Woodbridge Group of Companies, LLC and its Affiliated Debtors [D.I. 2832]*, filed in the Debtors' Bankruptcy Cases on October 19, 2018.

60. "September 13th Liquidation Trustee Correspondence" means the letter dated September 13, 2019, from Michael Goldberg (as the Trustee of the Woodbridge Liquidation Trust) to the Beneficiaries of the Liquidation Trust.

61. "Sharp Declaration" means the *Declaration of Bradley D. Sharp in Support of Confirmation of the First Amended Joint Chapter 11 Plan of Liquidation of*

*Woodbridge Group of Companies and Its Affiliated Debtors [D.I. 2829]*, filed on October 19, 2018.

62. "Summary" means the summary of "Real Estate Asset Values" (as described in paragraph 10 of the [Redacted] Chin Declaration – that estimated the aggregate market value of the Debtors' portfolio as of October 16, 2018, as $620,786,000) that was attached to as Exhibit 1 to the Chin Declaration.

63. "Transfers" means any and all payments or creditors from the Debtor to Defendant as identified under the column "disbursements" on Exhibit A to the Complaint.

64. "You" or "Your" shall mean the Plaintiff, the Liquidation Trust, any Entity owned by the Liquidation Trust, their predecessors in interest, and all past and present officers, directors, agents (including counsel), servants, employees, and anyone else acting on its behalf or otherwise subject to their control.

65. "Wind-Down Assets" has the same definition that was ascribed to such term in Section 1.146 of the Plan.

66. "Wind-Down Board" has the same definition that was ascribed to such term in Section 1.147 of the Plan.

67. "Wind-Down Board Members" means the members of the Wind-Down Board.

68. "Wind-Down Business Plan" has the same definition that was ascribed to the term in paragraph 7 of the [Redacted] Chin Declaration.

69. "Wind-Down CEO" has the same definition that was ascribed to such term in Section 1.148 of the Plan.

70.     "Wind-Down Entity" has the same definition that was ascribed to such term in Section 1.150 of the Plan.

71.     "Wind-Down Entity CEO" means Frederick Chin, who was designated as the Chief Executive Office of the Wind-Down Entity by the Wind-Down Entity Board.

72.     "Wind-Down Entity Distributions" has the same definition that was ascribed to such term in the form of Wind-Down Governance Agreement that was attached as Exhibit C to the Plan Supplement.

73.     "Wind-Down Entity Reporting Requirements" shall mean those reporting obligations that the Wind-Down Entity owes to the Liquidation Trust as its sole member, as set forth in paragraph 15(a) and (b) of the form of Wind-Down Governance Agreement that was attached as Exhibit C to the Plan Supplement, which states:

> Certain Covenants.
>
> (a) The Company shall advise the Member regarding the status of the affairs of the Company on at least a monthly basis and shall reasonably make available to the Member such information as is necessary for any reporting by the Member.
>
> (b) The Company shall advise the Member regarding any material actions by the Board, including the sale of any property prior to entering into a contract of sale or the change in course of the business plan agreed to as part of the Plan. If there is any disagreement between the Company and the Member as to a material matter, in the first instance the Company and the Member shall seek to resolve their dispute regarding such material matter. In the event the Company and the Member cannot resolve the dispute, then no action will be taken regarding such material matter absent an order of the Bankruptcy Court,

74.     "Wind-Down Expenses" has the same definition that was ascribed to such term in Section 1.151 of the Plan.

75. "Wind-Down Governance Agreement" has the same definition that was ascribed to such term in Section 1.3 of the Plan.

76. The term "all" and "each" shall be construed as all, each, any and every.

## GENERAL PROVISIONS AND INSTRUCTIONS

A. If the same person, Document, or transfer is required to be identified in your answer to two or more interrogatories, it is sufficient to identify it in your answer to the first interrogatory and thereafter refer to that answer in response to all subsequent interrogatories calling for identification of the same person, Document, or transfer.

B. Whenever in the Interrogatories the information requested is contained in or may otherwise be derived or ascertained from a Document, you may, in lieu of setting forth the requested information:

(a) Identify the document from which the answer may be derived;

(b) Specify the portion (or portions) of the Document that contains the information, or the way in which the information may be derived or ascertained; and

(c) Deliver a copy of the Document to Defendant's counsel contemporaneous with the service of the answers to the Interrogatories.

C. You are required to conduct a thorough investigation and produce all Documents (as defined below) in Your possession, custody, and control including all Documents in the possession, custody and control of Your attorneys, investigators, experts, officers, directors, employees, agents, representatives, and anyone acting on Your behalf.

D. The use of either the singular or plural shall not be deemed a limitation. The use of the singular should be considered to include the plural and vice versa.

E. The words "and," "or," and "and/or" are interchangeable and shall be construed either disjunctively or conjunctively or both, as broadly as necessary to bring within the scope of the Request those responses that might otherwise be construed to be outside the scope.

F. If You are unable to comply with a particular category(ies) of the requests below and Documents responsive to the category are in existence, state the following information:

1. The date of the Document;

2. The type of Document (e.g., letter, memorandum, report, etc.);

3. The name, address, telephone number and title of the author(s) of the Document;

4. The name, address, telephone number and title of each recipient of the Document;

5. The number of pages in the Document;

6. The document control number, if any;

7. The present location(s) of the Document and the name, address and telephone number of the person(s) who has (have) possession of the Document;

8. A specific description of the subject matter of the Document;

9. The reason why the Document cannot be produced or why You are unable to comply with the particular category of request.

G. You are under a continuing duty to seasonably amend Your written response and to produce additional Documents if You learn that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the Committee during the discovery process or in writing.

H. You are required to produce the full and complete originals, or copies if the originals are unavailable, of each Document responsive to the categories below along with all non-identical copies and drafts in its or their entirety, without abbreviations, excerpts, or redactions. Copies may be produced in lieu of originals if the entirety (front and back where appropriate) of the Document is reproduced and You or Your authorized agent or representative states by declaration or affidavit under penalty of perjury that the copies provided are true, correct, complete, and an accurate duplication of the original(s).

I. You are required to produce the Documents as they are kept in the usual course of business, or to organize and label them to correspond with each category in these requests.

J. If You withhold or redact a portion of any Document under a claim of privilege or other protection, each such Document must be identified on a privilege log, which shall be produced contemporaneously with the non-privileged Documents responsive to this Request for Production, and which privilege log shall state the following information:

    1.     The date of the Document;

    2.     The type of Document (e.g., letter, memorandum, report, etc.);

    3.     The name, address, telephone number and title of the author(s) of the Document;

4.     The name, address, telephone number and title of each recipient of the Document;

5.     The number of pages in the Document;

6.     The document control number, if any;

7.     The present location(s) of the Document and the name, address and telephone number of the person(s) who has (have) possession of the Document;

8.     A general description of the subject matter of the Document or the portion redacted without disclosing the asserted privileged or protected communication;

9.     The specific privilege(s) or protection(s) that You contend applies.

K.  This is a continuing request for production and You are requested to promptly provide supplemental responses if You create, receive, identify or locate any additional Documents responsive to these requests.

L.  Documents attached to each other should not be separated.

M.  Documents not otherwise responsive to this discovery request shall be produced if such documents mention, discuss, refer to, or explain the documents which are called for by this discovery request.

N.  The fact that a Document is produced by another party does not relieve You of the obligation to produce Your copy of the same Document, even if the two Documents are identical.

O.  In producing documents and other materials, You are requested to furnish all Documents or things in Your possession, custody or control, regardless of whether such Documents or materials are possessed directly by You or Your directors, officers, agents,

employees, representatives, subsidiaries, managing agents, affiliates, accountants, investigators, or by Your attorneys or their agents, employees, representatives or investigators.

P.  If You object to any part of any request, You shall state fully in writing the nature of the objection.  Notwithstanding any objection, You shall nonetheless comply fully with the other parts of the request to which You are not objecting.

Q.  Each Document shall be construed independently and not with reference to any other Documents for the purposes of limitation.

R.  The use of the singular form of any word includes the plural and vice versa.  The past tense shall include the present tense and vice versa.  Terms referring to or using one gender include both genders.

S.  IF YOU FAIL TO COMPLY WITH THE PROVISIONS OR RULE 7036 OF THE BANKRUPTCY RULES AND RULE 36 OF THE FEDERAL RULES WITH RESPECT TO ANY ADMISSION, THE MATTER OF WHICH AN ADMISSION IS REQUESTED WILL BE DEEMED ADMITTED.

T.  In accordance with Rule 36 of the Federal Rules, as made applicable herein pursuant to Rule 7036 of the Bankruptcy Rules, Defendant must supply an answer to any request for admission not unequivocally admitted that specifically denies the matter or sets forth in detail the reasons why the answering party cannot truthfully admit or deny the matter.  If only a portion of the request for admission should, in good faith, be denied, you must specify so much of the matter that is true and qualify or deny the remainder.

## REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:**

Admit that the Notice of Confirmation Hearing was not served upon the Defendant.

**REQUEST FOR ADMISSION NO. 2:**

Admit that the Affidavit of Service for the Notice of Confirmation Hearing does not Identify the Defendant as a party being served with the Notice of Confirmation Hearing.

**REQUEST FOR ADMISSION NO. 3:**

Admit that no other affidavit of service, or certificate of service, filed on the electronic case docket for the Debtors' Bankruptcy Cases, evidences service of the Notice of Confirmation Hearing upon the Defendant.

**REQUEST FOR ADMISSION NO. 4:**

Admit that the Notice of Effective Date was served upon the Defendant.

**REQUEST FOR ADMISSION NO. 5:**

Admit that the Defendant, and Defendant's address, appear upon the Affidavit of Service for Notice of Effective Date.

**REQUEST FOR ADMISSION NO. 6:**

Admit that the Notice of Confirmation Hearing could have been served upon the Defendant, since the Defendant's name and address were in possession of the Debtors and were used to serve the Notice of Effective Date upon the Defendant.

**REQUEST FOR ADMISSION NO. 7:**

Admit that in order for the Confirmation Order to Bind the Defendant, the Notice of Confirmation Hearing had to have been served upon the Defendant.

**REQUEST FOR ADMISSION NO. 8:**

Admit that in order for the Plan to Bind the Defendant, the Notice of Confirmation Hearing had to have been served upon the Defendant.

**REQUEST FOR ADMISSION NO. 9:**

Admit that since the Defendant was not served with the Notice of Confirmation Hearing, the Defendant is not Bound by Finding NN.

**REQUEST FOR ADMISSION NO. 10:**

Admit that since the Defendant was not served with the Notice of Confirmation Hearing, the Defendant is not Bound by the Confirmation Order.

**REQUEST FOR ADMISSION NO. 11:**

Admit that since the Defendant was not served with the Notice of Confirmation Hearing, the Defendant is not Bound by the Plan.

**REQUEST FOR ADMISSION NO. 12:**

Admit that because the Defendant is not Bound by Finding NN, the Defendant can assert an ordinary course of business defense against the Plaintiff under section 547(c) of the Bankruptcy Code.

**REQUEST FOR ADMISSION NO. 13:**

Admit that Defendant was not served with the Notice of Confirmation Hearing in order to prevent the Defendant from having an opportunity to object to Finding NN before the entry of the Confirmation Order.

**REQUEST FOR ADMISSION NO. 14:**

Admit that because You thought that the Defendant was Bound by Finding NN, You did not conduct an ordinary course of business defense analysis on the Transfers to the Defendant before filing the Complaint.

**REQUEST FOR ADMISSION NO. 15:**

Admit that the Plaintiff has no personal knowledge Concerning whether the debtors in the Debtors' Bankruptcy Cases were operating as a Ponzi scheme.

**REQUEST FOR ADMISSION NO. 16:**

Admit that the Plaintiff has not performed an independent analysis as to whether the debtors in the Debtors' Bankruptcy Cases were operating as a Ponzi scheme.

**REQUEST FOR ADMISSION NO. 17:**

Admit that the Plaintiff did not instruct the Agents and Professionals to perform an independent analysis as to whether the debtors in the Debtors' Bankruptcy Cases were operating as a Ponzi scheme.

**REQUEST FOR ADMISSION NO. 18:**

Admit that Finding NN in the Confirmation Order increased the Plaintiff's leverage in the Avoidance Actions that included preference claims because Finding NN prevents such defendants from asserting an ordinary course of business defense to preference liability.

**REQUEST FOR ADMISSION NO. 19:**

Admit that as a result of the Liquidation Trust's Revised Projected Plan Recoveries, the Plaintiff could demand higher settlement amounts from the defendants in the Avoidance Actions because

their respective claims under Section 502(h) of the Bankruptcy Code would be reduced as a result of the anticipated smaller recoveries to Class 3, 4 and 5 claimants under the Plan.

**REQUEST FOR ADMISSION NO. 20:**

Admit that even if the Defendant had been served with the Notice of Confirmation Hearing, the Defendant would still not be bound by Finding NN pursuant to the No Preclusion Clause.

**REQUEST FOR ADMISSION NO. 21**:

Admit that property values for the Portfolio increased after the covid pandemic.

**REQUEST FOR ADMISSION NO. 22**:

Admit that despite the increase in the values for the Portfolio, the Plaintiff decreased the Projected Plan Recoveries pursuant to the Liquidation Trust's Revised Projected Plan Recoveries.

**REQUEST FOR ADMISSION NO. 23**:

Admit that no complaint was ever filed in the Debtors' Bankruptcy Cases to determine whether the Debtors' were operating as a Ponzi scheme.

**REQUEST FOR ADMISSION NO. 24:**

Admit that other than in the Confirmation Order, no court in the United States has ever determined that the Debtors were operating as a Ponzi scheme pursuant to the entry of a final order.

**REQUEST FOR ADMISSION NO. 25**:

Admit that the debtors in the Debtors' Bankruptcy Cases and the Committees agreed in the Plan Term Sheet that "The Plan will admit and acknowledge that the Debtors were operating a Ponzi

scheme since at least August 2012 and that the date of discovery of such scheme was in

December 2017[.]" *Plan Term Sheet, ¶ C(2)(c), pg. 4.*

## INTERROGATORIES

### INTERROGATORY NO. 1:

On the last page of the September 13th Liquidation Trustee's Correspondence, the

Liquidation Trustee stated:

> *Updated estimates regarding beneficiary recoveries*
>
> In conjunction with preparing the financial information required in the Registration Statement, the Trust and the Wind-Down Entity have approved a revised business plan for the liquidation of the real properties formerly owned by the Woodbridge debtors and now owned by the Trust's subsidiaries. <u>The revised business plan takes into account updated financial circumstances and the current state of the Los Angeles real estate market, which has substantially changed during the past 12-18 months.</u> As many of you know, the vast majority of the projected recovery is from real properties located in Los Angeles; accordingly, estimated recoveries are heavily dependent on the state of the Los Angeles real estate market. (*September 13th Liquidation Trustee Correspondence, pg. 4.*)

Describe the updated financial circumstances, and the then current state of the Los Angeles real

estate market, that substantially changed during the 12-18 month period before the September

13th Liquidation Trustee Correspondence.

### INTERROGATORY NO. 2:

Identify the specific properties set forth in the [Sealed] Chin Declaration (in the exhibits

thereto, including the Summary) that were taken into account in connection with the updated

financial circumstances giving rise to the Revised Wind-Down Business Plan, including the

amount of such property value change for each effected property.

### INTERROGATORY NO. 3:

If a different method of property valuation was used on any of the properties other than

that method initially employed to value the properties in the [Sealed] Chin Declaration, explain

why such different method was used to create the Revised Wind-Down Business Plan.

**INTERROGATORY NO. 4**:

The September 13th Liquidation Trustee Correspondence is dated approximately 11 months before the filing of the Sharp Declaration (filed on October 19, 2018), the [Sealed] Chin Declaration (filed on October 19, 2018), and the entry of the Confirmation Order (on October 26, 2018). In the September 13th Liquidation Trustee Correspondence, the Liquidation Trustee stated that the Wind-Down Business Plan was being changed in order to reflect substantial changes that had occurred during the past 12-18 months before the September 13th Liquidation Trustee Correspondence.

Why weren't the changes that had occurred during the six months before the filing of the Sharp Declaration and [Sealed] Chin Declaration disclosed in the materials submitted to the Bankruptcy Court in connection with the Confirmation Hearing?

**INTERROGATORY NO. 5**:

Paragraph 15(a) and (b) of the Wind-Down Governance Agreement contained the Reporting Requirements that the Wind-Down Entity had to follow in connection with certain actions. In particular, paragraph 15(b) of the Wind-Down Governance Agreement required that:

[T]he Company shall advise the member regarding any material actions by the Board, including … the change in course of the business plan agreed to as part of the Plan.

Identify the Documents and information that the Wind-Down Entity provided to the Liquidation Trustee in connection with the formulation and creation of the Revised Wind-Down Business Plan.

**INTERROGATORY NO. 6**:

Describe the process that the Wind-Down Board undertook in connection with the formulation and creation of the Revised Wind-Down Business Plan

**INTERROGATORY NO. 7**:

Explain why You believe that Finding NN Binds the Defendant in light of the fact that the Notice of Confirmation Hearing was not served upon the Defendant.

**INTERROGATORY NO. 8**:

Explain Your understanding of the plain meaning of the language in the No Preclusion Clause.

**INTERROGATORY NO. 9**:

Explain why You believe that Finding NN is still applicable to the Defendant in light of the language in the No Preclusion Clause.

**INTERROGATORY NO. 10**:

Explain why You believe that the debtors were operating as a Ponzi scheme in light of the fact that the debtors' bankruptcy estates' Portfolio had an aggregate market value of $620,786,000 as of October 16, 2018, according to the estimate set forth in paragraph 10 of the [Redacted] Chin Declaration.

**INTERROGATORY NO. 11**:

Identify when the debtors acquired each property in the Portfolio.

**INTERROGATORY NO. 12**:

Explain how the debtors were able to obtain $100 million in financing pursuant to the Financing Motion if they had been operating as a Ponzi scheme?

**INTERROGATORY NO. 13**:

Explain why you believe that the debtors were operating as a Ponzi scheme in light of the fact that the debtors employed 135 full time employees, one part time employee, and approximately 27 contract workers according to the Employee Wages Motion?

**INTERROGATORY NO. 14**:

Identify which, if any, of the debtors' employees that were the subject of the Employee Wages Motion were employed by the Wind-Down Entity or the Liquidation Trust after the Effective Date.

**INTERROGATORY NO. 15**:

Identify which, if any, of the critical venders that were the subject of the Critical Vendor Motion were employed by the Wind-Down Entity or the Liquidation Trust after the Effective Date.

**INTERROGATORY NO. 16**:

To date, Identify All of the properties sold by the Wind-Down Entity, and the amount of sales proceeds received by the Wind-Down Entity for the sale of each property.

**INTERROGATORY NO. 17**:

To date, Identify the total Wind-Down Expenses incurred by the Wind-Down Entity.

**INTERROGATORY NO. 18:**

To date, state the total Wind-Down Distributions that the Wind-Down Entity has transferred to the Liquidation Trust.

**INTERROGATORY NO. 19**:

To date, state the total amount of distributions that the Liquidation Trust had made to Class 3, 4 and 5 claimants under the Plan.

**INTERROGATORY NO. 20**:

To date, Identify all Agents and Professionals employed by the Liquidation Trust after the Effective Date, and the total compensation paid to each.

**INTERROGATORY NO. 21**:

To date, disclose the terms of the Liquidation Trustee Compensation from the Effective Date to the present, including all amendments thereto during the pendency of the Debtors' Bankruptcy Cases.

**INTERROGATORY NO. 22**:

To date, disclose the total hourly and incentive compensation paid to the Liquidation Trustee.

**INTERROGATORY NO. 23**:

Excluding Avoidance Actions prosecuted before the Bankruptcy Court, Identify all settlements entered into by the Liquidation Trust and any third parties, including the amount of settlement funds that the Liquidation Trust received, or will receive, as a result of such settlements.

**INTERROGATORY NO. 24**:

As of this point in time, Identify the percentage of Distributions that the Liquidation Trustee anticipates will be made to Class 3, 4 and 5 Claimants under the Plan.

**INTERROGATORY NO. 25:**

Identify all witnesses that the Plaintiff intends to call during the trial on this matter if the controversy is not settled by the Plaintiff and the Defendant.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST NO. 1:**

The chapter 11 petition filed by the Debtor.

**REQUEST NO. 2:**

All Documents Concerning the Defendant, including, but not limited to, notes, contracts, investments, security agreements, financing statements, mortgages, and the Debtor's payment of the Transfers to the Defendant.

**REQUEST NO. 3:**

All Documents which evidence that the Transfers to the Defendant were made with property of the Debtor's estate.

**REQUEST NO. 4:**

All Documents Concerning payments to noteholders, venders, contractors, subcontractors, utilities, and any other provider of goods and services, for the two year period prior to the Petition Date.

**REQUEST NO. 5:**

All other Documents evidencing payments for business operations during the two year period prior to the Petition Date.

**REQUEST NO. 6:**

All Documents evidencing service of the Notice of Confirmation Hearing on the

Defendant.

**REQUEST NO. 7:**

All Documents provided to the DIP Lender Relating to the Financing Motion.

**REQUEST NO. 8:**

All Communications with the DIP Lender Concerning the Financing Motion.

**REQUEST NO. 9:**

All Documents evidencing payments made to creditors and vendors pursuant to the

Critical Vendor Motion.

**REQUEST NO. 10:**

The First Kapila Declaration, including all exhibits attached thereto, and any amendments

thereto.

**REQUEST NO. 11:**

The [Sealed] Chin Declaration, including all exhibits attached thereto (specifically

including, but not limited, to Exhibit 1, which is a Summary wherein Mr. Chin (i) estimated that

the aggregate market value of the Portfolio as of October 16, 2018 was $620,786,000, and (ii)

included an estimate of market value of each individual asset in the Portfolio as of October 16,

2018.[1]

---

[1] The Defendant needs the [Sealed] Chin Declaration, including all exhibits attached thereto, in order to try and refute the Plaintiff's contention that the Debtors were operating as a Ponzi scheme. The Defendant recognizes that this document was filed under seal pursuant to an Order approved by the Bankruptcy Court. *See Confirmation Hearing Transcript, pg. 13, lns. 13 – 24.* However, the basis for sealing the document was that the disclosure of the prices of the various properties therein, and contained in the attachments thereto, would probably be harmful to the Debtors and their creditor body. However, since almost six years have passed from the Confirmation Hearing, presumably all (or the vast majority) of the Portfolio has been sold. Accordingly, the disclosure of such materials should no longer pose a risk of harm to the Debtors and the creditor body. To the extent that there are still concerns, the Defendant is willing to enter

**REQUEST NO. 12**:

All Communications Concerning the Second Kapila Declaration.

**REQUEST NO. 13:**

The Wind-Down Governance Agreement.

**REQUEST NO. 14**:

The Wind-Down Business Plan, including all attachments thereto.

**REQUEST NO. 15**:

The Revised Wind-Down Business Plan, and all attachments thereto, and all subsequent revisions thereto.

**REQUEST NO. 16**:

All Documents relied upon in connection with the creation of the Revised Wind-Down Business Plan.

**REQUEST NO. 17:**

All Communication Relating to the creation of the Revised Wind-Down Business Plan.

**REQUEST NO. 18:**

All Documents Related to the sale of the Core Properties.

**REQUEST NO. 19**:

All Documents Related to the sale of the Riverdale Properties.

---

into a reasonable confidentiality agreement that would allow the Defendant to use the materials in connection with defending against the Complaint, while still maintaining their broader confidentiality.

**REQUEST NO. 20**:

All Documents Relating to sale of the Portfolio that were not previously included in the document requests with respect to the sales of the Core Properties and the Riverdale Properties.

**REQUEST NO. 21**:

All Documents Relating to Liquidation Trustee Compensation, including, but not limited to, all employment contracts, and payments of Liquidation Trustee Compensation.

**REQUEST NO. 22**:

All settlement agreements (excluding those for Avoidance Actions prosecuted before the Bankruptcy Court) entered into between the Liquidation Trust (or Liquidation Trustee) and any third parties.

**REQUEST NO. 23**:

All contracts and employment agreements entered into between the Trust and its Agents and Professionals.

**REQUEST NO. 24**:

All Documents evidencing payments made by the Liquidation Trust to its Agents and Professionals.

**REQUEST NO. 25**:

All Documents evidencing payments made by the Liquidation Trust to the Liquidation Trust Supervisory Board Members.

**REQUEST NO. 26:**

All Documents Relating to the Plaintiff's revisions to the Projected Plan Recoveries in the September 13th Liquidation Trustee Correspondence (i.e., the Liquidation Trust's Revised Projected Plan Recoveries).

**REQUEST NO. 27:**

All Communications Relating to the Plaintiff's revisions to the Projected Plan Recoveries in the September 13th Liquidation Trustee Correspondence (i.e., the Liquidation Trust's Revised Projected Plan Recoveries).

**REQUEST NO. 28**:

All Documents provided by the Wind-Down Entity to the Liquidation Trust pursuant to the Wind-Down Entity Reporting Requirements.

**REQUEST NO. 29:**

All Communications between the Wind-Down Entity and the Liquidation Trust Relating to the Wind-Down Entity Reporting Requirements.

**REQUEST NO. 30:**

All Documents evidencing payment of compensation to the Wind-Down Entity Board Members and officers of the Wind-Down Entity.

**REQUEST NO. 31:**

All Communications between the Plaintiff (or Liquidation Trust) and the Wind-Down Board Members concerning the Revised Wind-Down Business Plan.

**REQUEST NO. 32:**

All Documents exchanged between the Plaintiff (or Liquidation Trust) and the Wind-Down Members concerning the Revised Wind-Down Business Plan.

**REQUEST NO. 33:**

All Communications between the Plaintiff (or Liquidation Trust) and the Wind-Down CEO concerning the Revised Wind-Down Business Plan.

**REQUEST NO. 34:**

All Documents exchanged between the Plaintiff (or Liquidation Trust) and the Wind-Down CEO concerning the Revised Wind-Down Business Plan.

**REQUEST NO. 35:**

The Liquidating Trust's general ledger setting forth all receipts and payment of funds by the Liquidating Trust since its formation to the present.

**REQUEST NO. 36:**

To the extent not already provided in response to the prior requests for production of documents, All Documents relied upon in connection with the preparation of the Registration Statement filed with the Securities and Exchange Commission pursuant to the terms of the Plan and Liquidation Trust Agreement.

*[Remainder of Page Intentionally Left Blank]*

**REQUEST NO. 37:**

All Documents Relating to the PPP loan received by the Liquidation Trust, including but not limited to the PPP loan application filed by the Liquidation Trust.

Dated: July 29, 2024

LAW OFFICE OF CURTIS A. HEHN

Curtis A. Hehn (Bar No. 4264)
1007 N. Orange St., 4th Floor
Wilmington, DE 19801
Tel.: (302) 757-3491
Email: curtishehn@comcast.net

Counsel for Defendant